**UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE:<br><br>Southern Manufacturing Group, LLC,<br><br>Debtor(s). | C/A No. 15-00931-HB<br><br>Chapter 7<br><br>**ORDER DENYING MOTION TO SELL FREE AND CLEAR** |

**THIS MATTER** came before the Court for hearing on April 26, 2016, on John K. Fort, Trustee's ("Trustee") *Motion for Order Approving Sale of the Assets of Southern Manufacturing Group, LLC Free and Clear of Liens, Claims, Encumbrances and Other Interests* ("Motion").[1] Present at the hearing were Trustee, counsel for creditor Axis Capital, Inc. ("Axis Capital"), counsel for creditor Capital Bank, and counsel for Premier Manufacturing Group.[2] At the hearing, the parties were invited to make an evidentiary record and elected not to do so. Afterward, post-hearing briefs were suggested to support approval of the proposed sale based on the record before the Court. Trustee filed a post-hearing brief on May 30, 2016.[3]

## FACTS

The Motion proposes a sale of substantially all of the assets of the Chapter 7 bankruptcy estate to Cornucopia Resources, Inc. ("Cornucopia") free and clear of all liens in exchange for $635,000.00 and other consideration pursuant to 11 U.S.C. § 363.[4] The Asset Purchase Agreement between Trustee and Cornucopia attached to the Motion describes the property subject to the sale as:

---

[1] ECF No. 155, filed Mar. 18, 2016.
[2] Premier Manufacturing Group was represented as the proposed purchaser at the hearing, but its relationship to Cornucopia Resources, Inc., the proposed purchaser set forth in the Motion, was not explained to the Court.
[3] ECF No. 173.
[4] Further reference to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, shall be by section number only.

    (a) <u>Personal Property</u>. All equipment and tangible personal property owned by [the estate], including but not limited to those items of equipment and tangible personal property listed on Schedule B to the Summary of Schedules filed in the Case on March 6, 2015, except for those items listed on [a schedule] attached to this Agreement . . .

    (b) <u>Intangible Property</u>. All intangible personal property owned or held by [the estate] . . . together with all books, records and like items pertaining to the Business, including, without limitation, patents, processes, trademarks, trade names, service marks catalogues, customer lists and other customer data basis, correspondence with present or prospective customers and suppliers, advertising materials, software programs, and telephone exchange numbers identified with the Business . . .

    (c) <u>Inventory</u>. All supplies, goods, materials, work in process, inventory and stock in trade owned and held by [the estate] for use in connection with the operation of the Business . . .

(collectively, the "Assets").

The Motion proposes that upon closing of the sale, the purchaser will remit directly to Axis Capital an amount equal to $605,000.00[5] in exchange for satisfaction of its allowed secured claim. The Motion provides for a payment at closing of $30,000.00 from the purchase price ("carve-out") to be remitted to the estate free and clear of liens, along with the Debtor's accounts receivable, also free and clear of liens, which Trustee contends are expected to be worth $40,000.00. Therefore, the projected value to the estate from the proposed sale is up to $70,000.00.[6] The Motion states that despite substantial efforts to locate an alternate buyer, the sale was the highest offer the estate received.

The sales price is far less than the first priority blanket lien of Axis Capital on all of Debtor's assets, including accounts receivable, listed in the amount of $890,691.87. The

---

[5] Less any adequate protection or other payments that have been made to Axis Capital by the estate on or after March 14, 2016. *See* ECF Nos. 106, 159, & 169.

[6] The Motion contains this explanation: "Axis Capital's agreement to receive the Payoff Price in satisfaction of its allowed secured claim reflects, and is net of, an agreed carve out of $30,000.00, plus the value of all of the accounts receivable of Debtor, expected to be worth $40,000, from the sale, and the Trustee will retain the lien position of Axis Capital as first lienholder."

2

Motion indicates that, based on Debtor's Schedule D filed in this case, the following junior liens are claimed against the Assets, including Debtor's accounts receivable:

    2nd blanket lien: Business Financial ($129,097.00)
    3rd blanket lien: CH Capital ($65,000.00)
    4th blanket lien: Merchant Fund ($52,378.00)
    5th blanket lien: Pearl Capital ($44,500.00)
    6th blanket lien: Capital Bank ($645,168.00)

(collectively, the "Junior Lienholders" and "Junior Liens"). Additionally, the Motion states the County of Spartanburg asserts a claim for property taxes owed for the Assets, but asserts this claim is unsecured because it has not been levied.

The Motion and Trustee's post-hearing brief explain the sale of the Assets is made free and clear of any interests held by an entity other than the estate pursuant to § 363(f) because: (1) applicable non-bankruptcy law permits the sale of the Assets free and clear of such interests, 11 U.S.C. § 363(f)(1); (2) all parties with an interest in the Assets have consented to the sale, 11 U.S.C. § 363(f)(2); and/or (3) the parties with an interest in the Assets could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest. 11 U.S.C. § 363(f)(5).

Creditors Axis Capital and Capital Bank were present at the hearing and stated on the record their consent and support for the sale as proposed in the Motion. The record includes a certificate of service that indicates service by mail, first class postage prepaid, on the other Junior Lienholders. No other party filed pleadings on the docket or appeared at the hearing. In his post-hearing brief, Trustee included details of his attempts to contact the other Junior Lienholders.

#### DISCUSSION

**I.  11 U.S.C. § 363(B)**

Section 363(b)(1) provides "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate[.]"

> In determining whether to approve a sale proposed by a trustee under [§ 363(b)(1)], courts generally apply a business judgment test. Although the Trustee's business judgment is to be given "great judicial deference," the Court must scrutinize whether the Trustee has fulfilled his duty to "maximize the value obtained from a sale, particularly in liquidation cases."

*In re Derivium Capital, LLC*, 380 B.R. 392, 404 (Bankr. D.S.C. 2007) (quoting *In re Bakalis*, 220 B.R. 525, 532 (Bankr. E.D.N.Y. 1998)); *see also In re Shipman*, 344 B.R. 493, 495 (Bankr. N.D. W.Va. 2006) ("trustee's decision to sell a debtor's real property outside the ordinary course of business under 11 U.S.C. § 363(b) is reviewed by the court for compliance with the business judgment rule, i.e., the court must ensure that the trustee is making a decision that is not based on self interest or self dealing, and that the decision to sell is made on an informed basis, in good faith, and in the honest belief that the sale is in the estate's best interest."). To determine whether the business judgment test is satisfied, a sale is generally reviewed against four requirements: "(1) a sound business purpose exists for the sale; (2) the sale price is fair; (3) the debtor [or trustee] has provided adequate and reasonable notice; and (4) the purchaser has acted in good faith." *Shipman*, 344 B.R. at 495. "An exercise of such business judgment includes disposition of property if the trustee determines that such disposition is in the best interest of the estate." *In re Lakeside Dev., LLC*, C/A No. 11-05211-DD, 2012 WL 619071, at *4 (Bankr. D.S.C. Feb. 24, 2012).

From the allegations set forth in the Motion and the record, there is no dispute that the Assets to be sold are property of the estate. There are no allegations of bad faith or

self-dealing. Neither Debtor nor other parties in interest objected to the notice given, the method of sale, or the purchase price. Trustee proposes a sale that could result in funds paid to the estate.[7] However, his ability to consummate the sale and generate a benefit for the estate is dependent upon this Court's entry of an order approving the sale free and clear of any liens or interests.

## II.     11 U.S.C. § 363(F)

Trustee asserts that the sale meets the requirements of § 363(f), which imposes conditions on the ability of the Court to authorize a sale that is "free and clear of any interest of such property[.]" This Code section provides, in relevant part:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—
>
> **(1)** applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> **(2)** such entity consents; [or]
>
> . . . .
>
> **(5)** such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). The burden is on the sale proponent to demonstrate "that one of the provisions of § 363(f)(1)-(5) is applicable to each lien or interest from which the sale is to be free and clear." *In re Daufuskie Island Properties, LLC*, 431 B.R. 626, 637 (Bankr. D.S.C. 2010).

---

[7] The anticipated benefit to creditors is unclear as the record does not include details of assets available for distribution or claims to be paid. However, it can be assumed from a review of the unpaid claims of the Junior Lienholders that pro rata distributions to general unsecured creditors from the sale proceeds will not be significant.

5

### a. APPLICABLE NON-BANKRUPTCY LAW —11 U.S.C. § 363(F)(1)

Trustee asserts that the Assets could be sold free and clear of the Junior Lienholders' interests under South Carolina law. As a result, the Court may authorize the sale pursuant to § 363(f)(1).

S.C. Code Ann. § 36-9-610, *et seq.* (the "SC Code") provides that upon a default, the secured lienholder may take possession of collateral and sell it in a commercially reasonable manner. *See Andrews v. von Elten & Walker, Inc.*, 315 S.C. 199, 202, 432 S.E.2d 500, 502 (Ct. App. 1993) (referring to the former statute and stating that it authorizes the secured party to take possession of the collateral once a default has occurred and then reduce his debt to judgment, foreclose on the collateral, dispose of the collateral in a commercially reasonable manner, or retain the goods in satisfaction of his claim). The SC Code also imposes various notification requirements on the secured party, S.C. Code § 36-9-611, the purpose of which is to "allow the debtor to discharge the debt and redeem the collateral, produce another purchaser, or see that the sale is conducted in a commercially reasonable manner." *Brockbank v. Best Capita Corp.*, 341 S.C. 372, 384, 534 S.E. 2d 688, 695 (2000). The SC Code also provides the application of proceeds from the disposition of the collateral and states the order in which the secured creditor shall pay the proceeds, if any. S.C. Code Ann. § 36-9-615. Under the SC Code, junior liens may be extinguished by the foreclosure of the superior lien after commercially reasonable notice is provided. *See* S.C. Code § 36-9-617.

Courts have found that § 363(f)(1) "applies only to situations where the owner of the asset may, under nonbankruptcy law, sell an asset free and clear of an interest in such asset." *In re Jaussi*, 488 B.R. 456, 458 (Bankr. D. Colo. 2013) (refusing to allow a sale

6

free and clear under § 363(f)(1) when trustee relied on Colorado's foreclosure statutes, which authorize the sale of real property free and clear of the judgment liens because they would be extinguished by the foreclosure of the superior deed of trust) (citing Erens, B. and Hall, D., *Secured Lender Rights in 363 Sales and Related Issues of Lender Consent*, 18 AM. BANKR. INST. L. REV. 535, 545 (Winter 2010); 3 COLLIER ON BANKRUPTCY ¶ 363.06[2] at 363–50 (16th ed. rev. 2012)); *see also Dishi & Sons v. Bay Condos LLC*, 510 B.R. 696, 709 (S.D.N.Y. 2014) ("The question is whether 'permits sale' should be interpreted passively (and broadly) to refer to instances of free and clear sale by *any* person, or actively (and narrowly) to refer only to instances where a free and clear sale could be accomplished the trustee . . . Therefore, if one adopts the narrow interpretation, paragraph (1) would allow sale free and clear only when the owner of the property could accomplish such a sale under applicable nonbankruptcy law." (emphasis in original)); *but see* Brad B. Erens & David A. Hall, *Secured Lender Rights in 363 Sales and Related Issues of Lender Consent*, 18 AM. BANKR. INST. L. REV. 535, 545 (2010) ("Where the *value of the collateral is in excess of the first lien debt* on the property, but less than the amount of the first and second lien debt together, a sale may potentially proceed over at least the objection of the second lien lender because its interest could be extinguished in a nonbankruptcy foreclosure proceeding or UCC sale, thus arguably satisfying section 363(f)(1) of the Bankruptcy Code." (emphasis added)).

    The sale in question takes a portion of the purchase price and gives it back to the estate, rather than to secured creditors. The sale also proposes to except from the sale certain property (accounts receivable) subject to the Axis' lien and the Junior Liens and allow that property to remain with the estate, but free and clear of the liens. Even if the

Court were to accept a broad reading of the relevant statutes, Trustee has not demonstrated how the sale structure and distribution presented in the Motion are supported by the SC Code. The parties have not directed the Court to any sale under the SC Code or any other applicable nonbankruptcy law that corresponds to these terms. Therefore, Trustee failed to meet his burden that the sale is authorized under § 363(f)(1).

### b. CONSENT—11 U.S.C. § 363(F)(2)

Section 363(f)(2) requires consent of the affected party. Trustee asserts that the sale should be approved because the Junior Lienholders have consented to the sale free and clear of their liens by failing to respond to the Motion. There is a split in authority regarding whether a lienholder's failure to object constitutes an implied consent to a sale free and clear under § 363(f). *In re Silver*, 338 B.R. 277, 280 (Bankr. E.D. Va. 2004) (acknowledging the divide among courts on the issue (citing *Hargrave v. Pemberton* (*In re Tabone*), 175 B.R. 855, 858 (Bankr. D.N.J. 1994); *In re Shary,* 152 B.R. 724, 725 (Bankr. N.D. Ohio 1993); *In re Roberts,* 249 B.R. 152, 155–56 (Bankr. W.D. Mich. 2000))).

Factual circumstances may exist that provide grounds to find implied consent. *See FutureSource LLC v. Reuters Ltd.,* 312 F.3d 281, 285 (2002) (finding that the circumstances warranted for a lack of objection after notice to constitute consent where the affected interest was a license to use intellectual property); *Silver*, 338 B.R. at 280 ("This court has usually allowed sales of estate property where a lien or interest holder fails to respond to a motion to sell provided that the sale proceeds will be sufficient to pay liens of non-responsive parties."); *In re Takeout Taxi Holdings, Inc.*, 307 B.R. 525, 534-35 (Bankr. E.D. Va. 2004) ("Silence may be significant and may result in a § 363(f) sale if there is a sufficient allegation, for example, that the secured creditor's lien is subject to a bona fide

8

dispute or that the creditor consented to the sale. In such cases, the failure to respond may be taken as an admission that there is a bona fide dispute or that the creditor actually consented to the sale and the collateral may be sold under § 363(f)(4).").

However, the Court is not persuaded by the record made or the authorities cited by Trustee in his Motion and post-hearing brief that such circumstances are present here.[8] There is no issue as to whether the Junior Lienholders have perfected their liens and, therefore, they "could understandably expect that their interests would survive any subsequent transfer of title. Under these circumstances, the more reasonable inference is that silence would here imply the absence of consent." *In re Arch Hosp., Inc.*, 530 B.R. 588, 591 (Bankr. W.D.N.Y. 2015) ("a failure to oppose . . . differs fundamentally from an affirmation of acquiescence."); *In re Decelis*, 349 B.R. 465, 467-74 (Bankr. E.D. Va. 2006) (finding that a failure to oppose a motion to sell free and clear does not equate to consent pursuant to § 363(f)(2) and distinguishing cases that find otherwise); *Takeout Taxi Holdings, Inc.*, 307 B.R. at 534-35 ("The failure of a secured creditor to respond to a motion to sell free and clear is not consent. In contract law, acceptance of an offer is normally not inferred from silence because there is normally no obligation to accept or even respond to an offer . . . Generally, silence is not consent sufficient to permit a sale under § 363(f)(2)."); *Roberts*, 249 B.R. at 156 ("Congress's juxtaposition of the word 'consents' and the phrase 'after notice and a hearing' in Section 363(c)(2) establishes beyond doubt that these are

---

[8] Some of the authorities relied on by Trustee are distinguished in the analysis set forth in *In re Decelis*, 349 B.R. 465, 469-73 (Bankr. E.D. Va. 2006). Trustee also relies in part on *Daufuskie*, where there was only one remaining creditor objection at the time of the hearing on the Chapter 11 trustee's motion to sell substantially all of the debtor's assets. With regard to lienholders that did not object to the sale motion (or objected and then withdrew), the court found that those lienholders were deemed to have consented under § 363(f)(2). *Daufuskie*, 431 B.R. at 640.

two separate and distinct concepts.").[9]  Accordingly, Trustee has failed to meet the requirements for the Court to authorize the sale pursuant to § 363(f)(2).

### c. COMPEL PARTY IN INTEREST —11 U.S.C. § 363(F)(5)

Section 363(f)(5) permits a sale free and clear of any interest when "such entity [holding the interest] could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest." The proceeds of this sale would provide nothing to the Junior Lienholders. Instead, the sale redirects proceeds away from the Junior Lienholders and to the estate. Trustee points to no legal or equitable proceeding that would compel such a result.

### CONCLUSION

This Court's ability to clear title is both granted and constrained by the Bankruptcy Code. Trustee has not met his burden of showing that the proposed sale of the Assets free and clear of any interests complies with § 363(f). Therefore, Trustee's Motion must be **denied**.

**AND IT IS SO ORDERED.**

**FILED BY THE COURT**
**06/07/2016**



US Bankruptcy Judge
District of South Carolina

Entered: 06/08/2016

---

[9] The *Roberts* court also distinguished the cases that provide that a failure to oppose constitutes consent by noting that these authorities "offer no good rationale for ignoring the clear language of Section 363(f). Most of the cited authorities offer nothing more than the conclusory statement that consent may be implied and one or more citations to support that proposition." 249 B.R. at 157.